### COMMONWEALTH *vs.* PAUL FRANCIS NAWN, JR.

Worcester. October 3, 1984. — February 7, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN & O'CONNOR, JJ.

*Practice, Criminal,* Disclosure of defense witnesses, Severance, Restitution. *Evidence,* Self-serving statement, Silence, Speculative statement, Redirect examination. *Judge. Restitution. Constitutional Law,* Trial by jury.

Although the jury empaneled to hear a criminal case should not have been informed by a court clerk that the defendant intended to call his father as a witness, no prejudice resulted inasmuch as the father was in fact called to testify. [3-4]

The judge at a criminal trial correctly excluded evidence that the defendant, while in police custody and after receiving Miranda warnings, had denied the accusation against him. [4-5]

The judge at a larceny trial properly excluded, on his own initiative, proffered testimony by the defendant's father as to whether he had given the defendant certain currency. [5]

At the trial of a criminal case it was within the judge's discretion to permit a police witness to testify on redirect examination that, on the day after the defendant's arrest, the witness had gone to the defendant's house for a purpose not related to the charge being tried. [5]

The record of a criminal trial did not support the defendant's assertion that the judge's attitude was not impartial. [5-6]

Discussion of the procedure to be followed in a criminal case in determining the restitution or reparation to be made by the defendant. [6-7]

Where the sentencing proceedings in a larceny case did not afford the defendant a meaningful opportunity to challenge the amount of money he was

ordered to pay the victim as restitution, this court remanded the case for resentencing. [7]

This court expressed the view that a defendant convicted of larceny was not entitled, under art. 15 of the Massachusetts Declaration of Rights, to a jury trial on the issue of the amount of money he was to pay the victim as restitution. [8-9]

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on February 9, 1983.

On appeal to the jury session the case was tried before *William Garbose,* J.

*Michael S. Gallagher* for the defendant.

*Bradford S. Mauro,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After being convicted of larceny, see G. L. c. 266, § 30, by a jury of six, the defendant, Paul Francis Nawn, Jr., was sentenced to thirty days in the Worcester County house of correction, seven days to be served. The remainder of the sentence was suspended and Nawn was placed on probation for two years. As a condition of his probation, Nawn was ordered to pay restitution of $2,000. On appeal, Nawn alleges error in (1) the empanelment, (2) four rulings by the judge, and (3) the procedure used to determine restitution. We affirm the conviction. However, we conclude that the procedure used to determine the amount of restitution was faulty and therefore we vacate the sentence and remand this matter for a new sentencing hearing.

We summarize the facts. Carol Lee Hulten, the larceny victim, worked at the Pickadilly Pub in Auburn. After completing her shift on the evening of February 8, 1983, Hulten joined a group of her friends and the defendant, with whom she was acquainted, for a drink at the bar. Approximately forty-five minutes later, Hulten left the group to go to the restroom. She left her purse on the floor beside her bar stool. When she returned a few moments later, both her purse and the defendant were gone. After she announced that her purse was missing, one of the group told her that he had seen the defendant, who previously had removed his flannel shirt, leave the pub with the

shirt tucked under his arm. The manager of the pub telephoned the police. An officer arrived and interviewed Hulten and her friends. Hulten told the officer that her purse contained a pair of diamond earrings, a gold necklace, one new fifty-dollar bill, three twenty-dollar bills, and several one dollar bills.

After the officer left the pub, he observed the defendant leaving another bar located a short distance from the Pickadilly Pub. He detained the defendant, searched him, and discovered one fifty-dollar bill, five twenty-dollar bills, one ten-dollar bill, and twenty-nine one-dollar bills in the defendant's pocket. The defendant was arrested that night for the theft of Hulten's purse.

During jury empanelment, the clerk announced the prospective witnesses to the jury pool. He stated that a possible witness for the defendant was Paul F. Nawn, Sr. (the defendant's father). Defense counsel unsuccessfully objected, and moved for a mistrial the next day on the ground that it was error for the court to identify which party would be calling a potential witness. The judge denied the motion and the defendant's father testified at the trial.

During the trial, the judge sustained the Commonwealth's objection to defense counsel's attempt to elicit testimony from the officer that the defendant denied stealing the purse when he was arrested. In addition, the judge permitted the officer to testify that he had gone to the defendant's home on the day after the arrest for a purpose other than to investigate the present case.

After conviction, the Commonwealth moved for sentencing. In determining the appropriate sentence, the judge considered the issue of restitution. The victim told the judge that she estimated the value of the property in her purse to be $3,000, but she then agreed to accept $2,000. She was neither under oath nor subject to cross-examination. The defendant was not afforded an opportunity to rebut this evidence.

1. The defendant argues that his conviction must be reversed because the clerk improperly announced to the prospective jurors that the defendant's father would testify on his behalf and the judge refused defense counsel's attempt to object or

request a recess. Although, as we said in *Commonwealth* v. *Bolduc,* 383 Mass. 744, 747 (1981), the judge should not have allowed the clerk to indicate before trial which witnesses were testifying for the defense, the action here was not so prejudicial as to result in reversible error. Unlike *Bolduc,* the defendant in this case *did* call his witness to testify and therefore there was no occasion for the jury to speculate as to why a named witness did not testify. No Federal or State constitutional right was violated and no prejudice resulted from the error. *Commonwealth* v. *Hesketh,* 386 Mass. 153, 159 (1982).[1]

2. The defendant challenges four rulings of the judge. He argues that the judge erred by (a) refusing to permit the arresting officer to testify that the defendant denied stealing the purse when he was arrested, (b) refusing to permit the defendant's father to testify whether the fifty-dollar bill could have been part of his payment to the defendant; (c) allowing testimony of the arresting officer that implied the defendant was part of another, unrelated investigation; and (d) prohibiting defense counsel from stating grounds for his objections, making offers of proof, or explaining his evidence. These contentions are without merit.

a. The defendant contends that it was error for the judge to exclude the defendant's denial of the accusation of larceny made to the arresting officer. The defendant concedes that "[a] defendant's denial of accusation is inadmissible evidence for the Commonwealth." Nevertheless he contends that we should abandon our long-standing rule that if a defendant is charged with a crime and unequivocally denies it, that denial is not admissible in evidence. See *Commonwealth* v. *Cantor,* 253 Mass. 509, 512-513 (1925); *Commonwealth* v. *Trefethen,* 157 Mass. 180, 197 (1892); *Commonwealth* v. *Rogers,* 8 Mass. App. Ct. 469, 474 (1979); *Commonwealth* v. *Hosey,* 5 Mass.

---

[1] The *Hesketh* case differed from the instant one in that defense counsel did not object to the naming of the witnesses and the judge made a curative instruction. 386 Mass. at 159. These differences, however, do not detract from the fact that, as in *Hesketh,* the defendant here "was able to put his defense before the jury through his own witnesses and through vigorous cross-examination." *Id.*

App. Ct. 138, 141 (1977). See also P.J. Liacos, Massachusetts Evidence 288-289 (5th ed. 1981). The defendant asserts that a denial of guilt after Miranda warnings have been given has sufficient indicia of reliability that we should permit the admission of an unequivocal denial.

Evidence that an accused remained silent after Miranda warnings have been given him is not admissible. See *Doyle* v. *Ohio*, 426 U.S. 610, 617-618 (1976); *Miranda* v. *Arizona*, 384 U.S. 436, 468 n.37 (1966); *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977). The defendant does not cite any authority for the proposition that we should distinguish between defendants who remain silent after being advised of their Miranda rights and those who deny the accusation after being so advised. To so distinguish would diminish the right to remain silent, a step which we are not inclined to take. Therefore, we adhere to the rule that neither denial of an accusation nor evidence of an accused's silence after being advised of Miranda warnings is admissible.

b. The defendant's father stated he was not sure whether he had given his son a fifty-dollar bill a few days before the larceny. Since the father's testimony as to the fifty-dollar bill was speculative, the judge was within his discretion in excluding it. Further, contrary to the suggestion in the defendant's brief, the judge had discretion to exclude it on his own motion. *Commonwealth* v. *Haley*, 363 Mass. 513, 518 (1973).

c. The judge's decision to allow the officer's testimony on redirect examination, that when he went to the defendant's home the day after the arrest, it was not solely for the purpose of this case, was similarly within the judge's discretion. The defense counsel brought this fact out in cross-examination of the officer. The Commonwealth then clarified the matter on redirect examination. There is no error. "The purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination. . . . [E]ven if the redirect examination had exceeded the scope of cross-examination, the judge has discretion to allow or limit redirect concerning matters not touched on in cross-examination." *Commonwealth* v. *Hoffer*, 375 Mass. 369, 375 (1978).

d. The defendant asserts that at the trial the judge's attitude was not impartial. He argues that the evidentiary rulings should

be viewed in light of the fact that on occasion the judge denied him the opportunity to state the ground for his objection at sidebar or to make an offer of proof at the bench. The defendant likens the judge's rulings to the "silent communication" in *Commonwealth* v. *Webster*, 391 Mass. 271, 276-277 (1984). The defendant cites no specific statement by the judge which resembles a rebuke or would in any way prejudice the jury. Further, the record does not disclose coercive behavior on the part of the judge toward counsel or any juror. Thus, the record in this case is unlike that in the *Webster* case. "Error cannot be based on mere assertion or speculation . . . ." *Commonwealth* v. *Haley, supra* at 521.[2]

3. The last issue raised by the defendant concerns the appropriate procedure to be followed if a judge determines that the defendant should make restitution to the victim for the property stolen.[3] After the jury returned their verdict, the judge considered the matter of restitution in determining an appropriate sentence. Without being under oath or subject to cross-examination, Hulten, the victim, was called before the judge and asked to estimate the value of the stolen property. She valued the stolen property at $3,000.[4] The judge asked if she would accept $2,000. She agreed to accept $2,000. The judge ordered that, in addition to serving seven days of a thirty-day sentence, and being placed on probation for two years, the defendant also must pay $2,000 in restitution. Defense counsel objected to the restitution order on the ground that the defendant was denied an evidentiary hearing on the issue of restitution.

There is no question that restitution is an appropriate consideration in a criminal sentencing. See *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 717 (1961). The procedure used to

---

[2] It would have been better practice for the judge to have permitted defense counsel to make his offers of proof at the bench, but the fact that the judge might have improved on the procedure is not ground for reversal.

[3] Restitution in the context of sentencing is defined in G. L. c. 258B, § 1, inserted by St. 1983, c. 694, § 2, as "money or services which a court orders a defendant to pay or render to a victim as part of the disposition."

[4] According to the victim the purse contained a pair of diamond earrings and a gold chain, as well as money.

determine the amount of restitution or reparation must be reasonable and fair. "[P]ersons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie* v. *Connecticut*, 401 U.S. 371, 377 (1971). If the record reveals an arbitrary method of determining the amount of restitution, the order cannot stand. *People* v. *Heil*, 79 Mich. App. 739, 748-749 (1977). Thus, the defendant's request for a hearing and an opportunity to cross-examine the victim as to the value of the items taken was appropriate. "Few procedures, we think, are more likely to encourage such miscarriages than this one; a unilateral statement taken from one party that another party owes him money is accepted as a true and enforceable obligation, and that other party is never allowed to challenge the accuracy of the amount claimed." *Morgan* v. *Wofford*, 472 F.2d 822, 827 (5th Cir. 1973).

The hearing need not be elaborate; a forum for both sides to air their views and cross-examine is sufficient. See, e.g., *In re D.G.W.*, 70 N.J. 488, 503 (1976). "It seems desirable to have the defendant and his lawyer participate in the restitution decision. . . . The recommended amount of restitution or reparation and the manner of its payment should be included in [a probation] report and disclosed. . . . [T]he court could invite comment from defendant about the restitution the court is considering before it is imposed as a part of the sentence." *People* v. *Gallagher*, 55 Mich. App. 613, 620 (1974). The judge should also consider whether the defendant is financially able to pay the amount ordered. See Model Sentencing and Corrections Act § 3-601(*d*), 10 U.L.A. (Master ed. Supp. 1984); ABA Standards Relating to Probation § 3.2(*d*) (1970). Further, the defendant is entitled to rebut the victim's estimate of the value of her property with his own expert or other evidence. See G. L. c. 279, § 4B, fourth par. Because the defendant was not afforded any meaningful opportunity to challenge the amount of money ordered to be repaid, we vacate the sentence and remand for a new sentencing proceeding.

At the new hearing, the Commonwealth bears the burden of proving by a preponderance of the evidence the amount of the

victim's losses. See Victim and Witness Protection Act of 1982, 18 U.S.C. § 3580(d) (1982) (Pub. L. 97-291, § 5(a), 96 Stat. 1253-1255 [Oct. 12, 1982]). The victim, through the Commonwealth, may testify to the contents of her purse and the value of the items taken.[5] Cross-examination of the victim is limited to the issue of restitution and does not extend to matters concerning guilt or innocence.

The defendant did not request and has not requested a jury trial to determine the amount of restitution.[6] Nevertheless, we express our views that the defendant is not entitled, under art. 15 of the Declaration of Rights of the Massachusetts Constitution, to a jury trial on the question of restitution. Article 15 states: "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury . . . ." The instant controversy, however, is at heart a criminal one, focusing on adjudicating the guilt or innocence of the defendant, not a civil adjudication of damages. Restitution is therefore an appropriate condition of probation imposed by the judge within his sentencing discretion. *United States* v. *Satterfield,* 743 F.2d 827, 836 (11th Cir. 1984). The amount of restitution is not merely the measure of the value of the goods and money stolen from the victim by the defendant; in a criminal case, the judge must also decide the amount that the defendant is able to pay and how such pay-

---

[5] The prosecutor must assist the victim in documentation of the victim's loss if the victim requests such assistance. See G. L. c. 258B, § 3(*e*). The prosecutor may conclude that expert testimony as to the value of items taken would be more appropriate than that of the victim or may offer expert testimony as well as that of the victim.

[6] The Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579, 3580 (1982), which does not provide for a jury trial to determine the amount of restitution, has been held constitutional. *United States* v. *Brown,* 744 F.2d 905, 908 (2d Cir.), cert. denied, 469 U.S. 1089 (1984). *United States* v. *Satterfield,* 743 F.2d 827, 837, 843 (11th Cir. 1984), rev'g *United States* v. *Welden,* 568 F. Supp. 516, 534 (N.D. Ala. 1983). *United States* v. *Brown,* 587 F. Supp. 1005, 1006-1007 (E.D. Pa. 1984). We therefore assume that the absence of a jury trial in the context of criminal restitution does not violate any Federal constitutional right.

ment is to be made. Further, the judge may take into consideration the defendant's employment history and financial prospects, matters not central to a jury determination in a civil case. *Id.* at 836-837. Only issues of fact and law relating to the underlying crime, and not to the victim's damages, would be subject to issue preclusion. See *United States* v. *Brown,* 744 F.2d 905, 910 (2d Cir.), cert. denied, 469 U.S. 1089 (1984); *United States* v. *Satterfield, supra* at 837-838; *SEC* v. *Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 95 (2d Cir. 1978); *United States* v. *Brown,* 587 F. Supp. 1005, 1006-1007 (E.D. Pa. 1984). Thus, the possibility that the restitution award against the defendant may act to preclude the trial of issues in a subsequent private damage action does not entitle the defendant to a jury trial on the issue of restitution in sentencing proceedings.

The defendant's conviction is affirmed, but the matter is remanded to the jury-of-six session for resentencing in light of our opinion.

*So ordered.*