In May of 2016, the defendant pleaded guilty to breaking and entering, motor vehicle larceny, and other charges arising out of his theft of vehicles owned by Zipcar. The judge imposed a sentence of four to six years in State prison and a consecutive four-year term of probation. He then held an evidentiary hearing in accordance with Commonwealth v. Henry, 475 Mass. 117 (2016), to determine the defendant's ability to pay restitution. Following the hearing the judge ordered the defendant to pay restitution in the total amount of $4,800,[2] while waiving all court fees, including probation supervision fees. The defendant appeals.
The judge found the following facts, none of which have been shown to be clearly erroneous. At the time of the hearing, the defendant was twenty-nine years old, single, and "able-bodied," with no children. He did not graduate from high school but was enrolled in a "GED" program at Massachusetts Correctional Institution at Shirley, where he was incarcerated. He reported no substance abuse or mental health problems and was "articulate and thoughtful about himself and his difficult prospects upon his release from custody."
The defendant has been incarcerated since his arrest. Prior to his incarceration, he was not employed and received approximately $200 in food stamps per month. He lived with his brother, who did not charge the defendant rent, paid for his food, and occasionally gave him spending money. The defendant has no assets and has been "basically homeless" since his mother died in 2004. He also has an extensive criminal record and has served time on some of his convictions.
Although the defendant has never been steadily employed, he has worked odd jobs. For instance, he has occasionally passed out flyers to promote club performances and was paid cash in exchange, although not "enough ... to meet his daily needs."[3] He also worked in construction in 2007 or 2008. In addition, while incarcerated, he received an "OSHA certificate" and a certificate in culinary arts, which he "hopes to use ... to land a job when he leaves prison." The chef in the culinary program was impressed with the defendant's abilities and offered to help him find a job upon his release. The defendant does not know how long the offer will remain open, however, and he has no current job leads.
Based on these findings, the judge concluded that the defendant "is not likely to be able to pay restitution immediately upon his release from prison." But the judge further concluded that the defendant is "employable" and "reasonably likely to be able to pay" a total of $4,800 "over the course of his probation"-i.e., "$100/month for the 48 months of [the] defendant's probation"-so long as his court fees are waived. The judge stated that this was "[his] best assessment at this time" of the defendant's potential future earning capacity, but acknowledged that it was "a prediction fraught with uncertainty."
We recognize the difficulties the judge faced in this situation. Under Henry, 475 Mass. at 122, the judge had "to consider the defendant's ability to pay when initially setting the restitution amount," which required the judge to prognosticate what the defendant's financial circumstances would be when he is released from prison in several years. Nonetheless, we conclude that the matter must be remanded for two reasons.
First, although the judge found that the defendant will not be able to pay restitution immediately upon his release, the order appears to require monthly one-hundred-dollar payments "for the 48 months of [the] defendant's probation." Even assuming, as the Commonwealth argues, that the order requires only that the defendant pay a total of $4,800 over the course of his probation, the judge should have set a payment schedule that reflects the defendant's inability to make immediate payments. The judge could not "delegate to the probation department the responsibility of establishing a payment schedule," to the extent that was his intent. Id. at 128.
Second, in attributing potential future income to the defendant, the judge did not make the finding required by Henry that "the defendant is earning less than he ... could through reasonable effort." Id. at 127. Although the Commonwealth argues that such a determination is implicit in the order, Henry requires the judge to make a "specific[ ] finding" in this respect. Ibid. The judge must therefore articulate the grounds on which he is attributing income to the defendant, after considering his "employment history and financial prospects" and any other relevant circumstances. Ibid., quoting from Commonwealth v. Nawn, 394 Mass. 1, 9 (1985).
If the judge makes the required finding, he may then order restitution so long as it would not cause the defendant "substantial financial hardship." Ibid. In making this determination, "the judge must consider the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his ... dependents." Id. at 126. The judge may also take into account that it is the defendant who "bears the burden of proving an inability to pay." Id. at 121.
The order requiring the defendant to pay restitution is vacated, and the matter is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Vacated.

The judge found that Zipcar's actual loss was $31,413. The defendant does not challenge that finding.

The defendant testified that he received "$50 for the day."