NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1508                                    Appeals Court

COMMONWEALTH  vs.  KAREN BRUNO-O'LEARY.

No. 16-P-1508.

Plymouth.    March 2, 2018. - September 19, 2018.

Present:  Wolohojian, Massing, & Englander, JJ.


Practice, Criminal, Probation, Revocation of probation,
     Restitution, Findings by judge.  Restitution.



     Indictment found and returned in the Superior Court
Department on May 2, 2008.

     A proceeding for revocation of probation was had before
Cornelius J. Moriarty, II, J.


     Pamela Lindmark for the defendant.
     Johanna S. Black, Assistant District Attorney, for the
Commonwealth.


     MASSING, J.  A Superior Court judge revoked the defendant

Karen Bruno-O'Leary's probation and imposed a previously

suspended two-year term of imprisonment because she failed to

make restitution payments.  Although the judge disbelieved the

defendant's testimony that she could not afford the payments, he

did not sufficiently consider her financial resources and obligations before deciding to find her in violation. Without such findings, the record does not support the judge's conclusion that the defendant wilfully refused to pay restitution. Because we are left with a definite and firm conviction that an error has been made, we vacate the finding of violation and the revocation order.[1]

Background. The defendant's imprisonment came more than seven years after a protracted period of probation that began on January 29, 2009, when she pleaded guilty to an indictment charging a single count of larceny over $250.[2] The plea judge sentenced her to a suspended house of correction term of two and one-half years, with a five-year probationary period, and ordered the defendant to pay $98,000 in restitution: $10,000 to

---

[1] The defendant has served the maximum sentence for her conviction. The appeal is not moot, however, because the revocation of probation may have collateral consequences. See Commonwealth v. Wilcox, 446 Mass. 61, 61 n.1 (2006); Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703-704 (1976).

[2] The indictment alleged that the defendant "on diverse dates on or between August 31, 2006 through November 20, 2007, . . . pursuant to a single scheme, did steal or with intent to defraud obtain by a false pretense, or did unlawfully, and with intent to steal or embezzle, convert, or secrete with intent to convert, the property of Summer Hill Condominium Owners the value of such property exceeding two hundred and fifty dollars," in violation of G. L. c. 266, § 30. The record before us is silent about the nature of the crime. Based on the restitution order, we infer that it involved a substantial sum.

be paid the next day, and the remainder to be paid in accordance with a schedule to be determined by the probation department.

The probation department issued the defendant several violation notices over the course of her probationary period, primarily for failure to make restitution payments, but also for technical violations and new criminal behavior.[3]  It soon became apparent that the defendant's ability to make restitution payments was an issue.  At a probation violation hearing held on March 21, 2012, the plea judge suspended the defendant's restitution obligation based on her indigency and ordered the probation department to interview the defendant every four months to assess her ability to pay.  On June 26, 2013, the probation department reported to a second judge -- the judge who would ultimately impose the suspended sentence, referred to hereinafter as "the judge" -- that the defendant remained indigent.  The judge continued the case for further review of the defendant's financial status.

On December 16, 2013, the probation department issued another violation notice, this time alleging failure to pay restitution of $89,000.  On January 10, 2014, with the end of the defendant's original five-year probationary period

---

[3] From the record before us, it does not appear that the defendant was ever held in violation based on allegations of criminal conduct, or that she was convicted of any additional crimes.

approaching, a third judge found the defendant in violation and extended her probation for one year, to January 29, 2015. Five months later, the defendant filed a motion to reconsider her restitution obligation. At a hearing held on July 14, 2014, the plea judge extended the defendant's probation for another year, until January 29, 2016, and once again ordered the probation department to review the defendant's finances every four months to determine her ability to pay. The plea judge further ordered that "probation be terminated on [January 29, 2016,] upon successful completion of probation even if there is a balance left in restitution amount."

The probation department filed yet another violation notice on September 11, 2014. The judge found the defendant in violation on April 2, 2015, and ordered her to be held without bail pending sentencing.[4] On July 6, 2015, the judge ordered the defendant to be released and issued a new order of probation: he extended the defendant's probation for a third time,[5] until

---

[4] The September 11, 2014, notice was based on a complaint for credit card fraud dated April 30, 2014. Although the record does not reveal the basis for the judge's finding of a violation, the judge later commented, "I revoked the bail because I wanted her to understand the significance of what she was doing and what the consequences were. . . . She has to know what the consequences of the failing to -- you know, to abide by the order are."

[5] All three extensions, and the final probation revocation hearing, occurred prior to the issuance of Commonwealth v.

July 6, 2018; ordered her to pay $300 per month in restitution starting August 5, 2015; and ordered her to submit an affidavit detailing her assets and personal property by that date. The defendant provided the affidavit and made a partial restitution payment in August, 2015, a full payment in September, a partial payment in October, and no payments thereafter. The probation department issued another violation notice on December 14, 2015, for failure to make restitution payments.

At the final probation revocation hearing held on March 25, 2016, the defendant stated that she could no longer afford the $300 monthly restitution payments because her financial situation changed drastically in August, 2015. Her testimony, supplemented by a revised affidavit submitted at the hearing, showed that she and her two children received total monthly Social Security disability benefits of $2,087; she also received $324 per month in food stamps. She was unemployed and actively searching for work, which her felony conviction made difficult. She had enrolled in an online medical transcription certificate program so she could work from home. Her husband, who had been receiving workers' compensation payments since September, 2015,

---

Henry, 475 Mass. 117 (2016). As discussed infra, Henry articulated the legal standard for determining a defendant's ability to pay restitution, id. at 126-127, and established that extending the length of probation merely because the probationer is unable to pay restitution is improper. Id. at 124.

had lost his job in January, 2016. Neither the defendant nor her husband had any retirement savings, bank accounts, or stocks. The family used a car that they borrowed from the defendant's mother-in-law.

As to expenses, the family rented a three-bedroom house for $1,695 per month. In order to pay the $1,600 heating oil bill for the winter, they had not paid the electric bill and owed $1,400. The defendant and her husband paid $105 per month for two cellular telephones (cell phones) and cell phone service. The defendant recalled that during the last restitution hearing, when the judge set the amount at $300 per month, the judge said "that the monthly restitution payment could be adjusted if [she] was unable to make the set monthly payments."

After hearing the defendant's testimony, the judge said that he simply did not believe her. "She was told that if [there are] issues with payment, . . . come back in. And she never did. . . . I don't believe her; okay? I just don't. She's had her chances, multiple chances. And she has just simply decided that she's going to do what she wants to do." The judge found the defendant in violation and revoked bail. At defense counsel's request, the judge agreed to delay final disposition for one week (until April 1, 2016) to allow counsel to brief the legal issues concerning the revocation of the

defendant's probation in light of her professed inability to pay.

At the April 1, 2016, hearing, the judge entertained the defendant's motion to reconsider his determination that she had violated the terms of her probation. The judge reiterated his finding that "her violation of probation is willful," and that he had "grave doubts about her credibility." For example, the judge noted that the defendant's winter heating bills would not have affected her ability to make restitution payments in October or November. Concluding that the defendant "made very little effort over the past seven years to make this good," the judge revoked the defendant's probation and ordered the defendant committed to serve the balance of her suspended sentence.[6]

Discussion. In probation revocation proceedings, the Commonwealth bears the burden of proving, by a preponderance of the evidence, that the probationer violated the terms and conditions of her probation. See Commonwealth v. Holmgren, 421 Mass. 224, 226 (1995). When the alleged violation is the failure to make payments imposed as a term or condition of

---

[6] During the revocation hearings, defense counsel alerted the judge that the original sentence of two and one-half years in a house of correction exceeded the maximum sentence to a house of correction permitted by G. L. c. 266, § 30. The judge entered a corrected sentence of two years.

probation, the Commonwealth must show that the violation was wilful. See Commonwealth v. Henry, 475 Mass. 117, 121-122 (2016); Commonwealth v. Canadyan, 458 Mass. 574, 579 (2010); Commonwealth v. Pereira, 93 Mass. App. Ct. 146, 152 & n.7 (2018).

Inability to pay negates wilfulness. "A defendant can be found in violation of a probationary condition only where the violation was wilful, and the failure to make a restitution payment that the probationer is unable to pay is not a wilful violation of probation." Henry, 475 Mass. at 121. See Bearden v. Georgia, 461 U.S. 660, 669 n.10 (1983) ("[B]asic fairness forbids the revocation of probation when the probationer is without fault in his failure to pay [a] fine"). Furthermore, the defendant's mere ability to pay restitution is not enough. Unless a defendant can pay restitution "without causing substantial financial hardship" to herself and her dependents, failure to pay restitution is not wilful. Henry, supra at 127. Conversely, "violation of a probation condition involving the payment of money is wilful where the probationer has not shown an inability to pay or that the nonpayment was without fault or otherwise justified." Pereira, 93 Mass. App. Ct. at 152 n.7. See Henry, supra at 124 n.6, quoting Bearden, supra at 668 ("If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly

justified in using imprisonment as a sanction to enforce collection"); Commonwealth v. Gomes, 407 Mass. 206, 213 (1990) ("No constitutional difficulty is posed by the incarceration of a defendant who refuses or neglects to pay a fine").

When a judge is considering an order of restitution as a component of a criminal sentence, and the defendant asserts an inability to pay, the defendant bears the burden of establishing her lack of means by a preponderance of the evidence:

> "Where a defendant claims that he or she is unable to pay the full amount of the victim's economic loss, the defendant bears the burden of proving an inability to pay. See Commonwealth v. Porter, 462 Mass. 724, 732-733 (2012) (defendant bears burden of persuasion regarding indigency, in part because '[a] criminal defendant is the party in possession of all material facts regarding her own wealth and is asserting a negative'). Cf. United States v. Fuentes, 107 F.3d 1515, 1532 (11th Cir. 1997) (regarding restitution, 'the defendant must establish her financial resources and needs by a preponderance of the evidence')."

Henry, 475 Mass. at 121. We have indicated that the probationer also bears the burden of proving inability to pay as a defense in probation violation proceedings. See Pereira, 93 Mass. App. Ct. at 152 n.7.[7]

The defendant contends that the judge erred in determining that she failed to show an inability to pay and therefore wilfully violated the restitution order. "On appeal, we are

---

[7] In Pereira, 93 Mass. App. Ct. at 151, unlike the case before us, the defendant "offered no actual evidence of her inability to make the payments."

bound by a judge's findings of fact that are supported by the evidence, including all inferences that may reasonably be drawn from the evidence." Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 183 (2013), quoting Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005). "The credibility of witnesses, particularly, is a preserve of the trial judge upon which an appellate court treads with great reluctance." Springgate v. School Comm. of Mattapoisett, 11 Mass. App. Ct. 304, 310 (1981). "But it is not forbidden territory. There are exceptional cases 'where such findings have been changed in whole or in part on appeal, because plainly wrong.'" Id., quoting Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 407-408 (1937). "A finding is clearly erroneous [and thus not supported by evidence] when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.'" Care & Protection of Olga, 57 Mass. App. Ct. 821, 824 (2003), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993). This is such a case.

The evidence was uncontested that the defendant was not employed and that Social Security disability benefits and food stamps were her only sources of income. She was also, together with her unemployed husband, supporting two children. The judge

inferred that her failure to pay must have been wilful because she chose to make partial payments in some months and made no payments in others, without informing the probation department that she could no longer afford to make the payments.[8]  However, the judge did not have the benefit of the Henry decision, which was issued approximately four months after the hearings in this case, and his findings "do not indicate that the judge sufficiently considered, as required, the matter of 'the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and . . . her dependents.'"  Commonwealth v. Vallejo, 480 Mass. 1001, 1002 (2018), quoting Henry, 475 Mass. at 126.

Indeed, the record suggests the opposite.  The judge appeared to consider whether the defendant had the mere ability to pay, noting that she had the money to pay for other

---

[8] Of course, before ordering restitution payments, "the judge should 'consider whether the defendant is financially able to pay the amount ordered.'"  Henry, 475 Mass. at 120, quoting Commonwealth v. Nawn, 394 Mass. 1, 7 (1985).  "To allow a judge to impose a restitution amount that the defendant cannot afford to pay simply dooms the defendant to noncompliance."  Henry, supra at 122.  The record before us does not include a transcript of the July, 2015, hearing during which the judge revised the terms of the defendant's probation to include restitution payments of $300 per month, and the defendant does not assert that the order was wrongly imposed.

necessities such as heating and a cell phone.[9]  Yet the question is not whether the defendant is able to pay restitution, but whether she can do so "without causing substantial financial hardship" to herself or her dependents.  Henry, supra at 127. The judge, without the guidance of Henry, did not consider the defendant's ability to pay under this standard.[10]

The defendant exercised poor judgment by failing to heed the judge's admonition that she "come back in" if she found herself unable to afford the court-ordered restitution payments. However, the judge did not make it a condition of the defendant's probation that she provide updates on her financial status.  See id. at 126 ("The defendant may be required to

---

[9] The judge erred when, during the April 1, 2016, hearing, he asked to see the defendant's cell phone, noted that he knew its value to be $600 because he had the same one, and drew a negative inference about her credibility on that basis.  "It is . . . plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer outside of court."  Duarte, petitioner, 331 Mass. 747, 749 (1954), quoting Wigmore on Evidence § 2569 (3d ed. 1940).  Moreover, the judge did not provide the defendant with an opportunity to explain why, as a mother of two young children, she may have needed a reliable cell phone.

[10] In An Act Relative to Criminal Justice Reform, St. 2018, c. 69, the Legislature amended several statutes regarding criminal defendants' indigency and ability to seek waiver of certain fees by inserting the "substantial financial hardship to the individual, the individual's immediate family or the individual's dependents" standard derived from Henry.  See id. at §§ 35-36, 100, 105, 112, 129, 133, 135, 149-151, 158, 163-165, 181-182, 184, 208-209, 211, 213.

report to his or her probation officer any change in the defendant's ability to pay").  And her failure to do so does not support the judge's conclusion that she could afford to make the payments.  See Commonwealth v. Jones, 9 Mass. App. Ct. 83, 90-91 (1980), quoting McDonough v. Vozzela, 274 Mass. 552, 558 (1924), and Carmichael v. Carmichael, 324 Mass. 118, 121 (1949) ("[I]t is well settled that '[m]ere disbelief of testimony is not proof of facts of an opposite nature or tendency,' and that 'such disbelief [will] not be [the] equivalent of proof to the contrary'").  While the judge was free to reject the defendant's testimony on credibility grounds, lacking a full consideration of the Henry factors, the record does not afford a reasonable basis for finding that the defendant wilfully violated the terms of probation.

"To be sure, the defendant bore the burden of persuasion, but the judge's findings were inadequate to support the conclusion that the defendant had an ability to pay restitution."  Vallejo, 480 Mass. at 1002.  Accordingly, the finding of a violation must be vacated.  In view of the fact that the defendant has fully served her sentence, however, there is no occasion to remand the case for further proceedings.  In addition, we note that the defendant's original five-year probationary period was extended three times for her inability to pay restitution.  These extensions were ordered prior to the

issuance of the <u>Henry</u> decision, in which the court declared "that a judge may not extend the length of probation where a probationer violated an order of restitution due solely to an inability to pay."  <u>Henry</u>, 475 Mass. at 124.  Any further extension of her probation would be impermissible.

<u>Conclusion</u>.  The order of March 25, 2016, finding the defendant in violation of the terms of her probation, and the order of April 1, 2016, revoking probation, are vacated.  An entry shall be made on the Superior Court docket that the defendant is discharged and her probation is terminated.

<u>So ordered</u>.